[No. 19481.   Department Two.—July 3, 1895.]

107 659
138 139

# A. RAMISH, RESPONDENT, v. KIRSCHBRAUN & SONS, APPELLANTS.

SALE—DELIVERY—PASSAGE OF TITLE—BILL OF LADING.—Where a carload of eggs was sold to be delivered in due course of freight transportation, and by agreement the bill of lading was made to the vendors as consignees, and by them indorsed to the vendee, and was to be sent with a sight draft upon the vendee to a bank at the vendee's place of residence, and to be delivered by the bank to the vendee upon his payment of the price of the eggs, the title to the eggs did not pass to the vendee before the bill of lading was received at the bank for delivery to him.

ID. — NEGLIGENCE IN DELIVERY — ACTION BY VENDEE — QUESTION FOR JURY.—In an action brought by the vendee of a carload of eggs, consigned under an agreement that delivery of the bill of lading was to be made to the vendee through a bank upon his payment of the price, to recover damages caused by a decline in the market value of the eggs by reason of the negligence of the vendor in failing promptly to forward the bill of lading, where it appears that the vendor detained it so that it did not reach the vendee when the carload of eggs arrived, though, if properly forwarded, it could have reached him at that time, it is proper to submit to the jury the question of negligence of the vendor under proper instructions.

ID.—RIGHT OF VENDEE TO STAND UPON CONTRACT—BOND TO OBTAIN POSSESSION.—The vendee of the eggs had a right to stand upon the terms of his contract, and was under no obligation to avail himself of permission from the railroad company to take the goods in advance of the presentation of the bill of lading upon protecting the railroad by a bond, and it was not incumbent upon him so to have obtained possession of the eggs, nor can his failure to do so prejudice his right to recover damages for the negligence of the vendor in failing to deliver them promptly in the manner agreed.

ID.—MEASURE OF DAMAGES.—The measure of damages sustained from a failure to deliver a carload of eggs sold according to an agreement for delivery of the bill of lading through a bank upon payment of the price, is the difference between the market value of the eggs at the time when they should have been delivered according to the contract, and the market value at the time when the bill of lading was ready for transfer by the bank.

ID.—EVIDENCE OF VALUE—HARMLESS RULING.—Where the proof showed that in the ordinary course of business delivery would have been made on the tenth day of the month, the admission of evidence of the value of the goods on the 9th of the same month is without prejudice where all the witnesses agreed that the value remained the same on both days.

ID.—TIME OF DELIVERY—QUESTION FOR JURY.—Where there is evidence that the bank received and held the bill of lading for delivery on the 12th of the month, but it is not disputed that upon the 12th and 13th of the same month, in response to a demand of the vendee therefor, the

bank declared that it did not have the bill of lading, and the vendee was only notified of their readiness to deliver it on the 14th of the same month; the determination of the time when the bank had the bill of lading ready to be turned over to the vendee is properly left to the jury.

ID.—INSTRUCTION AS TO MEASURE OF DAMAGES—DATE OF DELIVERY—PLEADING—EVIDENCE—HARMLESS REFERENCE TO ACTUAL DELIVERY. The jury could not be misled by taking into their computation of the value of the eggs sold their supposed value at the date of taking manual possession, upon which date no evidence was given of their value, under an instruction that the measure of damages for failure to deliver the eggs is the difference between their value upon the day when they should have been delivered, according to the terms of the contract, and their value upon the day when they were actually delivered and received, where it appeared that although the vendee did not receive the manual possession of the eggs until the 18th of the month, yet the evidence as to their market value was confined to the days between the 9th and 14th of the month, and plaintiff had pleaded delivery of the eggs to himself on the 14th of the month, and it appeared that the bill of lading was then ready for transfer by the bank, and that the verdict rendered was not for an amount in excess of what the evidence reasonably supported; but, under these facts, the reference in the instruction to the date of actual possession was harmless.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial.

The action was brought by A. Ramish against Kirschbraun & Sons to recover the amount of six hundred dollars damages, alleged to have been sustained by the negligence of the defendants to deliver a carload of eggs according to agreement upon their arrival at Los Angeles. The verdict rendered was for the sum of four hundred and eighty dollars. Further facts are stated in the opinions of the court rendered upon former appeals in 90 Cal. 581, 98 Cal. 576, and in the opinion of the court rendered upon this appeal.

*Will D. Gould*, for Appellants.

*Finlayson & Finlayson*, for Respondent.

HENSHAW, J.—Appeals from the judgment and from the order denying a new trial. The facts of the case will be found stated in the opinions of this court ren-

dered upon former appeals.    (*Ramish* v. *Kirschbraun*, 90 Cal. 581; 98 Cal. 676.)

The evidence warranted the jury in believing, as from the verdict it will be presumed it did believe, that the carload of eggs was sold by defendants to plaintiff, to be delivered to the latter in Los Angeles in due course of freight transportation from either Omaha, Nebraska, or some point of shipment in Iowa. By agreement, also, the bill of lading made to defendants as consignees, and by them indorsed to plaintiff, was to be sent with a sight draft to the Southern California National Bank at Los Angeles, by which it was to be delivered to plaintiff upon his payment there of the price of the eggs. Under these circumstances there was no transfer of the title to the eggs before the bill of lading was received at the bank for delivery. (*Reynolds* v. *Scott* (Cal., July 18, 1884), 4 Pac. Rep. 346; *Erwin* v. *Harris*, 87 Ga. 333; *Kelsea* v. *Ramsey etc. Mfg. Co.*, 55 N. J. L. 320; *Dows* v. *National Exch. Bank*, 91 U. S. 618; *Brandt* v. *Bowlby*, 2 Barn. & Adol. 932; *Newcomb* v. *Boston etc. R. R. Corp.*, 115 Mass. 230.)

The eggs arrived at 7 P. M. of July 9th, and would then have been delivered to plaintiff upon presentation of the bill of lading, though, in ordinary course of business, delivery would have been made the following day; but the bill of lading had not arrived. There had been negligent delay by defendants in mailing it from Omaha. Forwarded from the shipping point in Iowa it reached them in Omaha upon July 3d, but too late to be remailed on that day with the sight draft, which defendants first discounted at a local bank. It could have been mailed at that time with an order for payment merely. The following day was a holiday. Upon the next the matter was neglected, and upon July 6th the bill, with the draft, was forwarded. Defendants contend that, despite their failure to forward the bill as expeditiously as they might, nevertheless, they put it in the postoffice upon July 6th, when, in the ordinary course of the mail (four days between Omaha and Los

Angeles), it should have reached the bank, and, constructively, plaintiff, upon July 10th, the day when the car was ready for delivery, and that therefore they had used due diligence.   But, considering the nature of the goods shipped, the market conditions, the original delay of defendants, the fact that defendants' agent—the bank—if it received the bill upon July 12th, yet, seemingly, through dereliction, did not have it ready for delivery until the 14th, sufficient was shown to warrant the submission of the question of negligence to the jury under proper instructions.   And the jury was properly instructed.   The instructions, the refusal to give which is complained of, were one and all embraced in those actually given, in so far as they were proper to give at all.   The fact that, under agreement with the railroad, the plaintiff, who was a truckman, was allowed to take freight of consignees in advance of presentation of the waybill—the railroad being protected by a bond—did not make it incumbent on him so to obtain possession of the eggs.   He was under no obligation to put himself or his bondsmen in jeopardy in the matter, and it was his right to stand upon the terms of his contract. By those terms delivery of the waybill was to be made to him through the bank upon his payment of the price, and it was the understanding of the parties that the delivery of the eggs should be had in the manner indicated.

Of the exceptions to the instructions given, one only merits special consideration.   The court instructed the jury: "In estimating the damages you will first ascertain what day the eggs should have been delivered, according to the terms of the contract and the value of the eggs upon that day; and you will then ascertain what day the eggs were actually delivered to and received by the plaintiff, and the value of the eggs upon that day.   If the value of the eggs upon the day last mentioned was the same as or greater than upon the day when they should have been delivered according to the contract, then the plaintiff has sustained no damage,

and your verdict should be accordingly.  If, however, you find the value of the eggs upon the last-mentioned day, namely, the day when they were actually delivered and received, was less than the value of eggs upon the day when they should have been delivered according to the terms of the contract, then the measure of damages will be the difference.  By 'value of eggs' is meant the market value of eggs."  The evidence showed that plaintiff took the waybill and manual possession of the eggs upon July 18th, but no evidence was admitted as to the market price of eggs upon that date.  The evidence was confined to the days between the 9th and 14th of July, both included.  Nor, if it be conceded that evidence of the value upon July 9th was inadmissible under the proof that in the ordinary course of business delivery would have been made on the 10th, still no prejudicial error can be predicated thereon, since all the witnesses agree that the value remained the same on the 9th and 10th.  The delivery claimed by defendants upon July 12th, and that pleaded by plaintiff upon July 14th, both rest upon the proposition of law that the moment when defendants' agent— the bank—had the waybill ready to be turned over to plaintiff, then, so far as defendants were concerned, delivery by them had been made, and for any further delay they were not responsible.  This proposition is sound, and it was more than once declared to the jury by instructions.

The contention of defendants, supported by the bank's evidence, is that the bank received and held the waybill for delivery on July 12th, and it is therefore claimed that this date limits defendants' liability.  Upon the part of plaintiff it is claimed, and the evidence is not disputed, that the bank, upon the 12th and 13th of July, in response to demand, declared that it did not have the bill, and that upon the 14th only was plaintiff notified of their readiness to deliver it.  The determination of the time under these circumstances was left, and properly left, to the jury.

The error of the instruction, and the injury worked by it, defendants claim, consist in this, that it uses the phrase "actual delivery," as contradistinguished from the constructive delivery of the 12th or 14th, and founds damage upon such actual delivery, and that the jury was therefore misled into adopting the lower market price obtaining upon July 18th, instead of the higher price of July 12th or 14th, as the basis of their computation of damages. But plaintiff pleaded delivery to himself upon July 14th; admitted the delivery on that day by telegram to defendants to that effect; the court fully and repeatedly instructed the jury that defendants' liability for further damage ceased immediately when the way-bill was ready for transfer; it is admitted by plaintiff that this was upon the 14th; the pleadings have not been amended, and it has become the law of the case that evidence of damage should not go to a date later than July 14th; and, finally, as has been said, testimony of the varying market values was not admitted as to any date subsequent to the 14th. Under these circumstances it cannot be held that the jury could have been misled by taking into their computation the value of eggs at a date upon which no evidence was given of that value. Moreover, the verdict rendered was not for an amount in excess of what the evidence reasonably supported.

The judgment and order are affirmed.

McFARLAND, J., and TEMPLE, J., concurred.